United States Court of Appeals,

Fifth Circuit.

No. 89–6118.

IN THE MATTER OF:  MEYERLAND CO., and WILLIAM M. ADKINSON, Debtors,

FEDERAL DEPOSIT INSURANCE CORP. as Manager of the FSLIC Resolution Fund as Receiver for Continental Savings Association, Appellant,

v.

MEYERLAND CO., and William ADKINSON, Appellees.

May 13, 1992.

Appeal from the United States District Court For the Southern District of Texas.

Before POLITZ, Chief Judge, REYNALDO G. GARZO, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, SMITH, DUHÉ, WIENER, EMILIO M. GARZA, and DeMOSS, Circuit Judges.[1]

DUHÉ, Circuit Judge:

### Proceedings Below and Appellate Jurisdiction

Meyerland Co. and William M. Adkinson sued Continental Savings Association ("Continental") for, among other things, usury and fraud in state court.  Continental counterclaimed for fraud and breach of contract.  The trial court awarded Continental $30,031,089.99 and Adkinson $1,124,109.59 in damages.  Meyerland and Adkinson appealed.

After the appeal was filed, the Federal Home Loan Bank Board declared Continental insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver.  The FSLIC removed to federal district court which remanded on April 21, 1989.

On August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub.L. 101–73, 103 Stat. 183, 383 was enacted.  The Federal Deposit Insurance Corporation (FDIC) succeeded the FSLIC as the receiver of Continental and the FDIC then removed

---

[1]Judges Edith H. Jones and Rhesa H. Barksdale are recused.

this case on September 7, 1989 under § 209[4] of FIRREA (12 U.S.C. § 1819(b)(2)(B)).[2]  The

district court again remanded and awarded the appellees $2,500 in sanctions.

The FDIC appeals.  Although remand orders are generally not appealable, 12 U.S.C. §

1819(b)(2)(C) authorizes an appeal in this case.  This appeal presents two issues:  (1) Whether 12

U.S.C. § 1819(b)(2) authorizes the FDIC to remove a state court appellate proceeding;  and (2)

Whether the district court erred in awarding sanctions.

## I. *Removal Power Under FIRREA*

Congress enacted FIRREA, a broad revision in federal banking law, in response to the recent

and ongoing savings and loan crisis.  *See Meliezer v. RTC,* 952 F.2d 879, 881 (5th Cir.1992);

*Smallwood v. OTS,* 925 F.2d 894, 898 (6th Cir.1991).  One of the ways FIRREA addresses the

problems facing this nation's thrift institutions is through "provisions which expand, enhance and

clarify enforcement powers of the financial institution regulatory agencies."  H.Rep. No. 101–54(I),

101st Cong., 1st Sess. 291, 311, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 107.

Specifically, FIRREA greatly expands the FDIC's role in regulating and supervising such institutions.

*Id.* at 310–11, *reprinted in* 1989 U.S.Code Cong. & Admin.News at 106–07.  *See also* Note, *The

FDIC's Enhanced Powers Over Savings Associations:  Does FIRREA Make It "SAIF"?,* 59

Ford.L.Rev. S381, S382 (1991).

This case requires us to examine the extent of the FDIC's powers under FIRREA.  At issue

are jurisdictional and removal provisions giving the FDIC broad power to gain access to federal

courts in actions to which it is a party pursuant to FIRREA.  The provisions relating to removal,

---

[2]Although the FIRREA was enacted after the current proceeding was initiated, it is clear that the FDIC may utilize it.  *See Turboff v. Merrill Lynch, Pierce, Fenner, & Smith,* 867 F.2d 1518, 1521 (5th Cir.1989).  ("When Congress adopts statutory changes while a suit is pending, the effect of which is not to eliminate a substantive right but rather to change the tribunal which will hear the case, those changes—barring specifically expressed intent to the contrary—will have immediate effect.")  (citing *Hallowell v. Commons,* 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916));  and *In re Resolution Trust Corp.,* 888 F.2d 57, 58 (8th Cir.1989).

found in 12 U.S.C. § 1819(b)(2), read as follows:

> (A) In general
>
> Except as provided in subparagraph (D), *all suits of a civil nature* at common law or in equity *to which the Corporation,* in any capacity, *is a party shall be deemed to arise under the laws of the United States.*
>
> (B) Removal
>
> Except as provided in subparagraph (D), *the Corporation may,* without bond or security, *remove any such action,* suit, or proceeding *from a state court to the appropriate United States district court.* (emphasis supplied).[3]

The power conferred by FIRREA to invoke federal jurisdiction and to remove from state court is substantial. *See Carrollton–Farmers Branch Independent School District v. Johnson & Cravens,* 889 F.2d 571, 572 (5th Cir.1989); *Triland & Holdings & Co. v. Sunbelt Service Corp.,* 884 F.2d 205, 207 (5th Cir.1989). *See also Jameson v. FDIC,* 931 F.2d 290, 291 (5th Cir.1991) (FIRREA extends FDIC's jurisdiction to include persons no longer affiliated with insured institutions); *FDIC v. Griffin,* 935 F.2d 691, 696 (5th Cir.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992) (allowing federal jurisdiction even when FDIC has been voluntarily dismissed as a party). Access to federal courts in all actions to which it is a party allows the FDIC to develop and rely on a national and uniform body of law, consistent with eliminating the problems identified by Congress in having less rigorous state standards coexisting with federal ones.[4] *See Smallwood v.*

---

[3]12 U.S.C. § 1819(b)(2)(D), which relates to situations in which state, as opposed to federal, authorities appoint the FDIC as receiver, which involve only a state depository insurance system, *and* which require only the interpretation of state law, does not apply to this case.

> While this matter was pending before us, § (b)(2)(B) was amended to add at the end thereof the following: "before the end of the 90–day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party."

[4]The House Report on FIRREA explained the problem with having federal and state regulatory systems simultaneously supervising thrift institutions: "In addition to having greater powers, many state-chartered thrifts found a far less rigorous regulatory and supervisory environment at the state level ... As long as the federal government was responsible for picking up the tab for a failed state-chartered thrift, there was no great incentive for many state legislatures to deny the sweeping demands for additional investment powers made by the thrift industry. The results were tragic. Seventy percent of all FSLIC expenditures during 1988 went to pay for problems created by high-risk, ill-supervised, state-chartered thrifts in California and

*Office of Thrift Supervision,* 925 F.2d at 898 ("We read many portions of the FIRREA as establishing the primacy of the Federal interest as regards the solvency and viability of the Federal deposit insurance system.").

In the case before us, first FSLIC and then the FDIC sought removal from state to federal court, FSLIC under 12 U.S.C. § 1730(k)(1) (repealed by FIRREA) and the FDIC under 12 U.S.C. § 1819(b)(2)(B), after a state court judgment had been entered, without seeking relief from judgment under Fed.R.Civ.P. 60, and while the case was on appeal to the appropriate state appellate court. In each case, the federal district court remanded to state court, concluding that neither FIRREA nor 28 U.S.C. §§ 1441–51, the general removal statutes, authorized removal at this stage of the proceedings.

Although it is not clear whether the general removal statutes permit appellate removal,[5] the dissent relies upon the rule that federal district courts lack jurisdiction to review final state court judgments to support their position that § 1819 does not permit it. Specifically, they rely on *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Their reliance is misplaced. Under the *Rooker–Feldman* line of cases, federal statute defines "final state court judgments" as those "rendered by the highest court of a state in which a decision could

---

Texas. Those same two states absorbed 54 percent of FSLIC expenditures in 1987." H.Rep. No. 101–54(I), 101st Cong., 1st Sess. at 297, *reprinted in* 1989 U.S.Code Cong. & Admin.News at 93.

[5]We do not decide whether this type of removal would be proper under 28 U.S.C. § 1441. First, the FDIC could not remove the instant case under § 1441. The dispute hinges on state law and, thus, there is no federal question jurisdiction. Second, it is uncertain whether the FDIC may utilize § 1441 to effectuate removal in any case, not just the present one. In *FDIC v. Sumner Financial Corp.,* 602 F.2d 670 (5th Cir.1979) we held that the predecessor statute to 12 U.S.C. § 1819(b)(2) was a complete jurisdictional scheme and that both original and removal jurisdiction over the FDIC was proper only if the case fell within the ambit of § 1819. *Id.* at 677–80. *See also FDIC v. Elefant,* 790 F.2d 661 (7th Cir.1986). It is not entirely clear, however, that *Sumner* is still good law. In *FSLIC v. Ticktin,* 490 U.S. 82, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989) the Supreme Court held that the statute granting jurisdiction over FSLIC, 12 U.S.C. § 1730(k)(1), was not exclusive and did not preclude the exercise of jurisdiction under other grants of jurisdiction. The FSLIC jurisdictional statute was very similar to the statutory predecessor to the FDIC jurisdictional statute, and *Ticktin,* therefore, calls into question the result in *Sumner.*

be had." 28 U.S.C. § 1257(a). The judgment of the Texas state district court is not a "final" judgment within this definition. Two higher courts within the state judiciary could hear appeals. *See Market St. Ry. Co. v. Railroad Commission of State of California,* 324 U.S. 548, 551, 65 S.Ct. 770, 772, 89 L.Ed. 1171 (1945) (a state judgment is final (1) if it is an effective determination of litigation in that it is not an interlocutory or intermediate judgment and (2) when it is subject to no further review or correction in any other state tribunal).[6]

The FDIC directs us to the broad language of § 1819 in arguing that the statute authorizes removal in this case. Under this reasoning, because the statute does not specifically prohibit appellate removal, it authorizes it. Appellees, on the other hand, insist that the language is so broad that the statute is silent on this issue and that the FDIC should not be able to remove cases at this stage of state proceedings. To resolve this issue, we must look to the plain language and meaning of FIRREA, the Constitutional authority of Congress to grant this sort of removal jurisdiction, and whether there is any reason to think that Congress could not have intended this result.

A. Plain Meaning of the Statute.

As in any case requiring statutory construction, the High Court has instructed us to adhere to the plain language of the law unless "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). The Supreme Court recently reaffirmed this standard in *Demarest v. Manspeaker,* which involved 28 U.S.C. § 1821. —— U.S. ——, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991). In *Demarest,* the Court said, "We do not believe that

---

[6]Furthermore, the modern view of removal is that it is more closely akin to original than to appellate jurisdiction because once the case is removed, it is treated as if it had commenced in federal court. *See Freeman v. Bee Machine Co.,* 319 U.S. 448, 452, *rehearing denied,* 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489 (1943), and *Savell v. Southern Ry.,* 93 F.2d 377, 379 (5th Cir.1937). The older approach to removal jurisdiction viewed removal as an appeal because the proceeding did not commence in federal court. *See, e.g., Barrow v. Hunton,* 99 U.S. 80, 25 L.Ed. 407 (1879). Under the modern understanding, removing this case does not constitute the appeal of a state court judgment to federal court.

this is one of those rare cases where the application of the statute as written will produce a result "demonstrably at odds with the intentions of its drafters.' " *Id.* 111 S.Ct. at 604. We agree that, on its face, the language of 12 U.S.C. § 1819(b)(2)(B) allows removal at the procedural posture in which this case comes to us.[7] The statute states that the FDIC may "remove *any* such action, suit, or proceeding from *a state court* to the appropriate United States *district court*" (emphasis supplied). The statute's plain language is quite plain: Any action in a state court may be removed. This language does not limit removable actions to those that have not yet reached a state trial court judgment, nor does it limit removable actions to those that come to the federal courts from a specific state court (i.e., from state trial, as opposed to appellate, court). Furthermore, the contrast between the broad "a state court" and the specific "United States district court" within the same sentence strongly suggests that the drafters intended the meaning urged by the FDIC.

Like the Eleventh Circuit, which considered this issue under § 1819(b)'s predecessor statute, we can "discern no reason to confine the interpretation of "action [from a State court]' to actions that have not reached judgment." *In re Savers Federal Savings & Loan Assoc.,* 872 F.2d 963, 966 (11th Cir.1989). In *In re Savers* a debtor sued a financial institution in state court claiming as here, breach of contract and fraud and the institution counter claimed to recover on the debtor's note. After judgment and after denial of post-trial motions for hearing, new trial, and remittitur, the FSLIC was appointed conservator of the institution. It then filed notice of removal. The district court remanded concluding that the case was completed in state court and that defendant was, in effect, seeking appeal. The Eleventh Circuit granted mandamus and vacated the remand on the basis of § 1819(b)(2)(B).

---

[7]The FDIC contends that the language of 12 U.S.C. § 1821(d)(13)(B) establishes its right to remove appellate proceedings. This subsection states "In the event of any appealable judgment, the Corporation as conservator or receiver shall have all the rights and remedies available to the insured depository ... and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights." Although we agree that this case is removable, we cannot accept this argument. While § 1821 makes it clear that the FDIC may remove a suit after judgment, it does not clearly establish that the FDIC may remove a case which is on appeal.

The Eleventh Circuit framed the question as "whether after there has been a final judgment by the state trial court, but when the period for appeal has not yet lapsed, a case ceased to be an "action from a state court.' " 872 F.2d at 965–66. The court concluded that it did not and stated: "Had Congress intended to limit the removal power of FSLIC to suits pending before a state trial court, it could have explicitly stated as much, as it did in ... 12 U.S.C. § 632...." *Id.* at 966.

In the instant case, it is true, removal is sought from the state appellate court whereas in *Savers* no appeal had yet been filed. The significant factor, however, is that *state appellate proceedings had not yet been exhausted when removal was effected. Accord Murray v. Ford Motor Company,* 770 F.2d 461, 463 (5th Cir.1985) (per curiam); *Butner v. Neustadter,* 324 F.2d 783 (9th Cir.1963); *Munsey v. Testworth Laboratories, Inc.,* 227 F.2d 902, 903 (6th Cir.1955) (per curiam). In *FDIC v. Yancey Camp Development,* 889 F.2d 647, 648 (5th Cir.1989), a case which was on appeal, we allowed removal and the district court set aside a default judgment.

Therefore, unless Congress lacks the power under Article Three of the United States Constitution to confer federal jurisdiction upon federal district courts in cases such as this one, or unless Congress could not have intended to do so when it enacted FIRREA, the district court erred in remanding this action to the state court.

B. Article III Power to Create Jurisdiction in Federal District Courts.

While it is black letter law that "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution," *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 491, 103 S.Ct. 1962, 1970, 76 L.Ed.2d 81 (1983), the power of Congress to authorize removal of cases on appeal has been repeatedly affirmed. *See Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat) 304, 349, 4 L.Ed. 97 (1816) ("Congress ... may authorize removal either before or after judgment."); *Gaines v. Fuentes,* 92 U.S. 10, 18, 23 L.Ed. 524 (1876); and *Tennessee v. Davis,* 100

U.S. 257, 269, 25 L.Ed. 648 (1880). Congress, however, has seldom chosen to exercise this power,[8] and we must decide whether it has done so by enacting the FDIC removal statute.

## C. The FDIC Removal Statute.

1. *History.*

Special considerations arise because § 1819 is a jurisdictional statute. Jurisdictional statutes must be interpreted with an eye towards history.[9] The opponents would have us believe that adopting the FDIC's view of § 1819 thoughtlessly and improvidently pushes "arising under" jurisdiction into a brave new world of expanded and uncontrollable growth, with no historical basis for this broadened approach. A review of the history of federal jurisdiction reveals that this statute does not carve out a new type of arising under jurisdiction never before seen. Rather, FIRREA returns us to an older version of arising under jurisdiction that existed until the early part of this century.

In *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat) 738, 822, 6 L.Ed. 204 (1824) Justice Marshall expounded on the outer limits of Article Three jurisdiction: "when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the

---

[8] Congress enacted at least one statute authorizing post-judgment removal during the Reconstruction era. *See* the Habeas Corpus Act of 1863, ch. 81, § 5, 12 Stat. 755, 757 ("And it shall be lawful in any such action or prosecution ... after final judgment, for either party to remove and transfer, by appeal, such case.")

[9] Justice Frankfurter in *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 360–379, 79 S.Ct. 468, 473–84, 3 L.Ed.2d 368 (1959) explained:

> [a]bstractly stated, the problem is the ordinary task of a court to apply the words of a statute according to their proper construction. But "proper construction' is not satisfied by taking the words as if they were self-contained phrases. So considered, the words do not yield the meaning of the statute. The words we have to construe are not only words with a history. They express an enactment that is part of a serial, and a serial that must be related to Article III of the Constitution, the watershed of all judiciary legislation, and to the enactments which have derived from that Article.
>
> If the history of the interpretation of judiciary legislation teaches anything, it teaches the duty to reject treating such statutes as a wooden set of self-sufficient words.... [We must not forget that it] is a statute, not a Constitution, we are expounding.

original cause, it is in the power of Congress to give the circuit courts jurisdiction of that cause." *Osborn* "reflects a broad conception of "arising under' jurisdiction, according to which Congress may confer on the federal courts jurisdiction over any case or controversy that may call for the application of federal law." *Verlinden,* 461 U.S. at 492, 103 S.Ct. at 1970. Even if the only issues to be decided are ones of state law, Article Three permits the exercise of jurisdiction if one of the parties is a federal corporation. *See, e.g., The Bank of the United States v. The Planters' Bank of Georgia,* 22 U.S. (9 Wheat) 904, 6 L.Ed. 244 (1824).

Congress, however, did not actually grant the lower federal courts removal jurisdiction over federal question cases until 1875.[10] This statute, the predecessor to 28 U.S.C. § 1441, was given an expansive interpretation in the *Pacific Railroad Removal Cases,* 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885). The *Pacific Railroad* Court relied on *Osborn* to hold that "every case, irrespective of its nature, brought by or against a federally charted corporation is a suit arising under the "laws of the United States.' " Frankfurter, *Distribution of Judicial Power Between United States and State Courts,* 13 Cornell L.Q. 499, 509 (1928).

The expansive reading given by the *Pacific Railroad* Court to "arising under" was soon curtailed. *Id. See also Romero,* 358 U.S. at 379 n. 50, 79 S.Ct. at 484 n. 50. 28 U.S.C. § 1331, for example, is interpreted more narrowly than the Constitution permits. *Verlinden,* 461 U.S. at 494–95, 103 S.Ct. at 1971–72. The general removal statute, 28 U.S.C. § 1441, is also not interpreted as broadly as it could be. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (the "policy of the successive acts of Congress regulating the jurisdiction of the federal courts is one calling for the strict construction of [removal]") and *Willy v. Coastal Corp.,* 855 F.2d 1160 (5th Cir.1988), *appeal after remand,* 915 F.2d 965 (5th Cir.1990), *aff'd,* ——— U.S. ———, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). *See also* Collins, *The Unhappy History of Federal Question Removal,* 71 Iowa L.Rev. 717 (1986).

---

[10]Act of March 3, 1875, ch. 137, § 2, 18 Stat. 470.

It is clear that no federal jurisdiction exists over the present dispute under either 28 U.S.C. § 1331 or § 1441 because the issues are governed by state law and federal law is a small ingredient of the dispute. *See Gully v. First National Bank at Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (for a suit to "arise under" federal law, a "right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action") and *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). It is equally clear that Congress enacted 12 U.S.C. § 1819 precisely so that the FDIC could enjoy federal question jurisdiction similar to that articulated in *Osborn* and the *Pacific Railroad Removal Cases. See Pernie Bailey Drilling Co. v. FDIC,* 905 F.2d 78 (5th Cir.1990); *Franklin National Securities Litigation v. Andersen,* 532 F.2d 842 (2nd Cir.1976); and *FDIC v. George–Howard,* 153 F.2d 591 (10th Cir.), *cert. denied,* 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946).

Thus, nothing in the history of federal jurisdiction compels us to ignore the plain meaning of § 1819 and find that it creates a more restricted type of removal jurisdiction than its language allows. Similarly, a broader look at the ways in which the statute enhances the FDIC's procedural, and in particular post-judgment powers reveals nothing inconsistent with our finding that it authorizes removal in this case.

2. *Other Procedural Advantages in FIRREA.*

We recently recognized an important way FIRREA increases the FDIC's post-judgment powers in *RTC v. McCrory,* 951 F.2d 68, 71 (5th Cir.1992). In that case, we held that FIRREA permitted federal regulators to assert their special defenses for the first time on appeal. *See also Union Federal Bank v. Minyard,* 919 F.2d 335, 336 (5th Cir.1990) (FDIC allowed to raise special defense for first time on appeal because, as the Corporation was not a party in the trial court, it had neither the occasion nor opportunity to raise it below); *FDIC v. Castle,* 781 F.2d 1101, 1106 (5th Cir.1986) (FDIC allowed to first raise defenses on appeal because applicability of defenses clear

under relevant statute). Generally, arguments not asserted until an action reaches an appellate level are lost. *See, e.g., Hulsey v. State of Texas,* 929 F.2d 168, 170 (5th Cir.1991), and cases cited therein. FIRREA confers a powerful litigation weapon by making such usually untimely arguments available to the FDIC. *But see Baumann v. Savers Federal Savings & Loan Assoc.,* 934 F.2d 1506, 1511 (11th Cir.1991), *petition for cert. filed,* (U.S. January 6, 1992) (holding that FIRREA does not allow Resolution Trust Corporation to raise issues on appeal which were not raised below).

Furthermore, 12 U.S.C. § 1819(b)(2)(C) allows the FDIC to appeal orders remanding removed actions to state courts. Under the general removal statutes, such orders are not appealable. 28 U.S.C. § 1447(d). In addition, the FDIC can remove in *any* case to which it is a party, even though generally *only defendants* can remove. 28 U.S.C. § 1441(a). In *Lazuka v. FDIC,* 931 F.2d 1530, 1535 (11th Cir.1991), the Eleventh Circuit held that § 1819 allows the FDIC to overcome the "well-pleaded complaint" rule. Under this rule, the basis for federal jurisdiction must appear on the face of the complaint. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Section 1819 allows the FDIC to invoke federal jurisdiction regardless of what appears in the complaint. The *Lazuka* court found that, in enacting FIRREA, "Congress used very strong language to afford the FDIC every possibility of having a federal forum within the limits of Article III." *Id.*[11] Although this is not a post-judgment advantage, it is another indication of the importance Congress placed on getting cases falling under the scope of FIRREA into federal courts.

Cumulatively, these procedural advantages bestowed by Congress tremendously increase the FDIC's ability to carry out its regulatory and enforcement responsibilities under FIRREA. These advantages allow the FDIC to step into the shoes of a troubled financial institution at any stage of proceedings without being penalized for the timing of that substitution and to effectively and aggressively protect the institution's interests and assets. Our finding that § 1819 allows removal in

---

[11]Additionally, it is even possible for parties *other* than the FDIC to remove an action once the FDIC becomes a party. *FDIC v. Otero,* 598 F.2d 627 (1st Cir.1979).

this case is completely consistent with the other procedural advantages FIRREA gives the FDIC and with the underlying goal of promoting uniform federal, as opposed to state, regulation and supervision of thrift institutions.

### D. Procedural Results of Allowing Appellate Removal.

Appellees argue against finding jurisdiction under FIRREA because of the procedural consequences. Their argument goes like this: If we allow removal after a final state court judgment has been entered and where Rule 60 relief is not available, the federal district court would have no original jurisdiction to exercise. Basically, it would face two choices. First, it could review the state court judgment in an appellate posture. We make no indication of the propriety of such action because it is not necessary to force district courts into this role when the other role available to them does not present such complex constitutional and jurisdictional issues.

This second option is for the district court to take the state judgment as it finds it, prepare the record as required for appeal, and forward the case to a federal appellate court for review. We are not persuaded that this so-called "rubber-stamping" by district courts is so at odds with Article Three jurisprudence that it precludes following the plain language of the statute or that Congress could not have intended this result.

It is argued that district courts, in order to exercise original jurisdiction, must "judge something" in order for there to be a case or controversy before them under Article Three. The case or controversy requirement does not, however, preclude federal appellate courts from remanding cases to district courts on a regular basis with instructions to take a prescribed action, such as enter judgment for a specified party. *See, e.g., Mulligan v. Schultz,* 848 F.2d 655, 658 (5th Cir.1988) (district court's dismissal for lack of subject matter jurisdiction vacated and case remanded with instructions to enter judgment for appellees); *Ferguson v. Heckler,* 750 F.2d 503, 505 (5th Cir.1985) (district court's upholding of an ALJ's determination under Social Security Act reversed and case

remanded with instructions to enter judgment in favor of the claimant); and *Thorne v. Jones,* 765 F.2d 1270, 1278 (5th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986) (district court's judgment against defendants for violating plaintiffs' constitutional rights reversed and case remanded with instructions to enter judgment for the defendants). The district court's role in these remand situations in no less mechanical and involves no more active a judicial role than does adopting a state court judgment and sending the proceeding to an appellate court.[12]

We have been presented with a parade of horribles which it is argued will follow from our holding. These premonitions unnecessarily complicate the matter. A case removed from state court simply comes into the federal system in the same condition in which it left the state system. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Etc.,* 415 U.S. 423, 435–36, 94 S.Ct. 1113, 1122–23, 39 L.Ed.2d 435 (1974). For instance, if the notice of appeal was adequate in the state court system, it should be deemed adequate when it enters the federal courts, regardless of whether the state technical requirements for notice of appeal differ from the federal. *Granny Goose,* 415 U.S. at 435–36, 94 S.Ct. at 1122–23 ("Judicial economy is promoted by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed in state court, for example, need not be duplicated in federal court.").

Finally, we do not intend by the holding in this case to suggest that the FDIC removal statutes "effect a wholesale replacement" of the general removal statutes found in 28 U.S.C. §§ 1441–51. We agree that § 1819(b)(2)(B) invokes Section 1441 by referring to "the appropriate United States District Court" and that FIRREA's lack of provisions for the mechanics of removal necessitates reliance on the general schema. Indeed, we recently held that the FDIC must adhere to the timely filing requirements of the general removal statutes. *FDIC v. Loyd,* 955 F.2d 316 (5th Cir.1992) (28

---

[12]A compromise to the case or controversy issue would be to allow removal only when Fed.R.Civ.P. 60 relief is available. We are certain, however, that Congress did not intend to deprive the parties to this dispute of their right to appeal and to relegate them to relief under Rule 60 when it expanded the FDIC's removal power by enacting the FDIC removal statute.

U.S.C. § 1446(b) timely filing requirement applies to the FDIC under FIRREA). FIRREA, however, confers a specific removal power to a federal corporation. To the extent that the specific powers or mechanisms in the statute are inconsistent with the general removal statutes, FIRREA supersedes the general statutes. This holding is consistent with the Eleventh Circuit's in *Lazuka v. FDIC,* which, like our decision in *Loyd,* held that removal under FIRREA does fit into the general removal scheme. 931 F.2d at 1536 (concluding that "the FIRREA removal provisions located at 12 U.S.C. § 1819 should be viewed as specific exceptions from the relevant provisions of general removal procedure, located at 28 U.S.C. §§ 1441, 1446, 1447" but reaching a different conclusion than *Loyd* concerning when the 30–day filing period under 28 U.S.C. § 1446 begins to run). Because the statutes and the law that has evolved from them conflict on the issue before us, FIRREA controls.

## II. *Sanctions*

Since we reverse the district court's decision to remand the instant appeal, it is clear that its award of sanctions for improper removal must also be reversed.

## Conclusions

The decision of the district court remanding this matter and assessing sanctions is REVERSED, its remand order is VACATED and this matter is REMANDED to the district court for further proceedings.

DeMOSS, Circuit Judge, specially concurring:

During the pendency of this matter on appeal, 12 U.S.C. § 1819(b)(2)(B) was amended to read as follows:

"(B) **Removal**

> Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court *before the end of the 90–day period beginning on the date the action, suit, or proceeding is filed against the Corporation*

*or the Corporation is substituted as a party*."  (Underlining added to indicate new language) (Pub.L. 102–242, Title I, § 161(d), 105 Stat. 2236, 2286, Dec. 19, 1991)

Some of my colleagues think that this amendment has little or no significance.  I think it does. The fundamental conflict in this case relates to the issue of whether the provisions of § 1819(b)(2)(B) indicate anything regarding Congress' intention about the status of the case being removed.  Absent the new language added to this Section by the 1991 Amendment, I am inclined to agree with the dissent that the "general language does not address the trial/appellate status" of the case being removed.

With the new language of the 1991 Amendment in place, however, the "plain meaning" argument of the majority holds water, even in the unusual circumstances involved in this case.  The new language indicates two periods of time when removal may be accomplished.  The first period of time begins with the filing date of an action, suit, or proceeding in a state court in which "the Corporation" (FDIC) is a party defendant and ends 90–days later.  The second period of time in which removal may be accomplished begins with the date the Corporation is substituted as a party in any action, suit, or proceeding in a state court and ends 90 days thereafter.

I recognize that the statutory language defining the second period does not contain express language like "regardless of the status of the case being removed."  But the language defining the first period does clearly indicate that the Congress thought about the subject of status of the case being removed (and the status of the Corporation as a party defendant therein) and the failure to use any language about the status of the case being removed (or the status of the Corporation as a party therein) in the definition of the second period should, in my mind, properly be construed as being a conscious omission;  leading to the conclusion that whenever removal is sought in a case in which the Corporation has been substituted as a party, the status of the case being removed (and the status of the Corporation as a party) is not material.

The first period for removal reflects the traditional circumstances for removal as contemplated

by 28 U.S.C. § 1441 *et seq.* but gives the Corporation 90 days instead of 30 days to effect removal. The second period for removal is a special and unique right granted to the Corporation as part of the broad remedial purposes of the FIRREA Legislation as described in the majority opinion. Likewise, for the reasons stated in the majority opinion, Congress clearly has the authority to establish this special and unique removal right. In the best of all worlds maybe Congress should have more thoroughly reflected its intentions with companion amendments which would expressly solve the uncertainties raised by the dissent. Obviously, we don't live in the best of all worlds. But I concur in the majority holding because I am satisfied that the language added by the 1991 Amendment does sufficiently express Congress' intent that removal be permitted even in the out-of-the-ordinary circumstances of this case.

POLITZ, Chief Judge, with whom GARWOOD, HIGGINBOTHAM, WIENER, and EMILIO M. GARZA, Circuit Judges, join, dissenting:

I cannot accept the major disruption of federal practices and procedures and the gross intrusion on the state judicial systems fostered by the majority opinion and therefore respectfully dissent. Persuaded that the removal of this case was inappropriate and improper, I would affirm the order of remand.

I briefly restate the procedural history and posture of these proceedings. Meyerland Co. and William M. Adkinson sued Continental Savings Association in state court in Texas for usury, fraud, fraud in the inducement, and misrepresentation. Continental counterclaimed for fraud and breach of contract. As damages, the trial court awarded Continental $30,031,089.99 and Adkinson $1,124,109.59. Meyerland and Adkinson appealed.

The parties had submitted their appellate briefs when, on September 30, 1988, the Federal Home Loan Bank Board declared Continental insolvent and appointed the Federal Savings and Loan Insurance Corporation as receiver. The FSLIC removed to federal district court but the case was remanded on April 21, 1989. On August 9, 1989, the Financial Institutions Reform, Recovery and

Enforcement Act (FIRREA), Pub.L. 101–73, 103 Stat. 183, was enacted and the FDIC succeeded the FSLIC as Continental's receiver. Claiming authority under FIRREA, 12 U.S.C. § 1819(b)(2)(B)),[1] the FDIC removed the cause. Our district court again remanded and imposed $2500 in sanctions upon the FDIC. The FDIC timely appealed.[2]

FIRREA expands the original and removal jurisdiction of the district courts by permitting the FDIC to remove cases which ordinarily would have been matters for the state courts. *See Carrollton–Farmers Branch Independent School District v. Johnson & Cravens,* 889 F.2d 571 (5th Cir.1989); *Triland Holdings & Co. v. Sunbelt Service Corp.,* 884 F.2d 205 (5th Cir.1989). The majority accepts the FDIC contention that FIRREA also allows the removal of a state court case even if the time for relief from judgment has run and the action is before a state appellate court. In cases in which Fed.R.Civ.P. 60 relief is not available, the disposition urged by the FDIC mandates one of two results: The federal district court, in reviewing the case on the merits, exercises appellate jurisdiction over the state court; or the district court must accept as its own the decision of the state court and immediately turn the case over to the appropriate federal court of appeals. I reject both alternatives and would conclude that if Rule 60 relief is either unavailable or not sought, FIRREA neither authorizes nor requires removal of a case from a state appellate court to a federal district court.

FIRREA, at 12 U.S.C. § 1819(b)(2), provides in pertinent part:

(A) In general

---

[1]FIRREA's jurisdictional provisions apply to cases pending on the date of its enactment. *See Triland Holdings & Co. v. Sunbelt Service Corp.,* 884 F.2d 205 (5th Cir.1989); *see also Kirkbride v. Continental Casualty Co.,* 933 F.2d 729 (9th Cir.1991); *Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815 (11th Cir.1991); *Demars v. First Service Bank for Savings,* 907 F.2d 1237 (1st Cir.1990); *In re Resolution Trust Corp.,* 888 F.2d 57 (8th Cir.1989).

[2]Although remand orders generally are not appealable, 12 U.S.C. § 1819(b)(2)(C) authorizes appeal by the FDIC.

Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.

(B) Removal.

Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.[3]

The FDIC insisted, and the majority now holds that the broad statutory language "any action, suit, or proceeding from a State court" permits removal regardless of the case's status within the state judicial system. Despite the breadth of the description of the categories of removable cases, however, the statute is silent on the critical question of the procedural posture of the litigation. I am convinced that the broad statutory language providing for removal of "any action, suit, or proceeding" describes and is limited to the *types* of removable matters; that general language does not address the trial/appellate *status.*

I am persuaded beyond peradventure that if Congress had intended to grant federal district courts the totally new power to review state court decisions, it would have articulated that authority with great specificity. An historical cornerstone of federal jurisdiction is that the general grant of jurisdiction to federal district courts does not include the power to review final state court judgments.[4] It is therefore only reasonable to expect that if Congress intended to vest the removal authority as embraced by the majority that authority would have been expressed with the same preciseness found in other specific jurisdictional grants. For example, Congress has promulgated express, succinct guidelines for judicial review of agency actions. *See* the Administrative Procedure Act, at 5 U.S.C. §§ 701–706. In empowering the courts of appeals with authority to review particular agency orders, Congress has not required, as in the FIRREA removal provision, that the case be presented initially to the district court but has, instead, expressly permitted filing directly in

---

[3]Subparagraph (D) is inapplicable to the present inquiry.

[4]*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

the courts of appeals.[5]  Similarly, the distinct boundaries of federal review of state court criminal procedures have been detailed expressly by Congress.  *See* 28 U.S.C. §§ 2241–2254.  One need be mindful that even the power of the United States Supreme Court to review final state court judgments has been legislatively defined.  *See* 28 U.S.C. § 1257.

That section 1819's broad statutory language is not sufficient to create the exceptional removal right granted by the majority should immediately be apparent when one considers the consequences of that holding.  Under today's holding we must either direct the district courts to sit as appellate courts over the removed state court cases, or require our trial courts to "rubber stamp" state court judgments and forward them to federal appellate courts for review.  The first option requires the district court to exercise appellate jurisdiction, not original jurisdiction.  *See* 28 U.S.C. § 1441(a).  The language purportedly requiring this result is contained not only in section 1819, but also in the very statute that forges the original jurisdiction limitation.  *Compare* 12 U.S.C. § 1819(b)(2)(B) ("any action, suit, or proceeding from a State court") *with* 28 U.S.C. § 1441(a) ("any civil action brought in a State court").

I see no conceivable support for the proposition that FIRREA effects a wholesale replacement of the usual federal schema, including the removal statutes, 28 U.S.C. §§ 1441–1451.[6]  For example, by referring to the "appropriate United States District Court," subsection 1819(b)(2)(B) obviously invokes the venue provisions of 28 U.S.C. § 1441(a).  FIRREA contains no provisions for the

---

[5]28 U.S.C. § 2342 (granting courts of appeals exclusive jurisdiction to review final orders of the Federal Communications Commission, the Secretary of Agriculture, the Secretary of Transportation, the Federal Maritime Commission, and the Interstate Commerce Commission);  8 U.S.C. § 1105a (Immigration and Naturalization Service order reviewed pursuant to 28 U.S.C. § 2341 *et seq.*);  29 U.S.C. § 160(f) (National Labor Relations Board orders reviewed by courts of appeals);  and, 18 U.S.C. § 843(e)(2) (Secretary of Treasury licensing decisions reviewed by courts of appeals).  *See also* 16 U.S.C. § 825*l* (delineating the power of the United States Court of Appeals for the District of Columbia to review final orders of the Federal Power Commission) and 28 U.S.C. § 2645 (Court of International Trade decisions reviewed by the Federal Circuit).

[6]*See, e.g. Lazuka v. Federal Deposit Ins. Corp.,* 931 F.2d 1530, 1536 (11th Cir.1991) (Congress intended "that the FDIC adhere in most respects to general removal procedure");  *Federal Deposit Ins. Corp. v. Norwood,* 726 F.Supp. 1073, 1075 (S.D.Tex.1989).

mechanics of removal. Without resort to the general statutes the procedures for notice of removal to the district court, for opposition thereto, and for stay of the state court proceedings are nonexistent. At this point it is worthy of underscoring that when Congress took FDIC cases out of the ordinary rule forbidding appellate review of remand orders, it expressly detailed that exception in 12 U.S.C. § 1819(b)(2)(C). By contrast, FIRREA contains no waiver of the original jurisdiction limitation of district court jurisdiction or of any of the other general federal rules or procedures.

The majority finds the second FDIC suggestion acceptable; I do not. A district court forced to adopt a state trial court decision as its own would not be exercising original jurisdiction over a case or controversy. I reject the suggestion that Congress would consider, even momentarily, imposing such a limiting function on an Article III court.[7] Further, assuming an adequate resolution of the district court's role, the incongruities inherent in this proposal extend even further for we are forced to theorize on the subject of our own jurisdiction. The FDIC suggests two procedural tracks for

---

[7]Congress' power to confer jurisdiction on federal courts under Article III of the United States Constitution is limited to "cases" and "controversies." In *National Mutual Insurance Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949), however, three Supreme Court Justices took the view, rejected by the other Justices, that Article I of the Constitution empowers Congress to confer on "constitutional" federal courts powers beyond those defined in Article III. This theory has never been sanctioned by a majority of the Court and it is not viable today. *See* L. Tribe, American Constitutional Law, 68, 187–88 (1988) (footnote omitted); C. Wright, The Law of Federal Courts 110 (1983).

Reserving comment on its validity, we also distinguish the theory popularly known as "protective jurisdiction." This theory has been posited to justify congressional grants of federal subject matter jurisdiction without concomitant substantive legislation, but not to justify grants of jurisdiction without the power to judge the case. *See* Bickel & Wellington, *Legislative Purpose and the Judicial Process: The Lincoln Mills Case,* 71 Harv.L.Rev. 1, 21 (1957); C. Wright, *supra.* at 110–11.

In addition, "[i]n order for a claim to be justiciable as an article III matter, it must "present a real and substantial controversy which unequivocally calls for adjudication of the rights' asserted." L. Tribe, *supra.* at 68 (quoting *Poe v. Ullman,* 367 U.S. 497, 509, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961) (Brennan, J., concurring in the judgment)). The "justiciability" maxim is anchored in concepts of "mootness," "ripeness," and "standing," and does not precisely address the "rubber stamp" theory before this court. *See e.g., Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Nonetheless, just as it requires an adversarial context, the case-or-controversy requisite of Article III would seem to require, at a minimum, the power to judge something.

today's holding, one which requires a notice of appeal and one which does not.[8] Both of these alternatives are in conflict with other well-established rules. One rubric provides that once a case has been removed to federal court its course is governed by federal law. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 441, 94 S.Ct. 1113, 1125, 39 L.Ed.2d 435, 451 (1974). The majority embraces *Granny Goose Foods.* Another rule obliges the federal court to accept the case "in its current posture "as though everything done in state court had in fact been done in the federal court.' " *Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1303 (5th Cir.1988) (quoting *Savell v. Southern Ry.,* 93 F.2d 377, 379 (5th Cir.1937) and discussing *Granny Goose Foods* ). If a case is already on appeal in state court and is subsequently removed to a federal district court, however, we must either ignore the federal notice of appeal requirements in order to accept the case in its state posture, or we must ignore the state posture by requiring a federal notice of appeal. With today's holding, without any congressional leave the *jurisdictional* notice of appeal simply disappears. By a deft brush of legal legerdemain the majority automatically vests federal appellate jurisdiction over a state court case which has, somehow, passed through the precincts of a powerless district court judge. Appellate jurisdiction is just one example of the attendant clashes between state and federal procedures. If, "any action, suit, or proceeding" means *any matter* at *any stage* in the litigation process, then a case may be removed while a writ of certiorari

---

[8]One proposed procedural track that this court could adopt to effectuate the FDIC's interpretation would not require a federal notice of appeal. The FDIC suggests:

> Under this approach, an appeal perfected in state court results in the perfection of an appeal in the federal circuit court. Because a notice of appeal has already been filed in state court and is, upon removal, on file in the federal district court, no new notice would need to be filed in the federal court. The state court notice of appeal would be given the same effect as if it were a notice of appeal filed in federal court. The federal district court need only transmit the record to the federal court of appeals so that the case can proceed from the point where it left off in state appellate court.

> The FDIC also proffers an alternative proposal, the procedure followed by the Eleventh Circuit in *Jackson v. American Sav. Mortg. Corp.,* 924 F.2d 195 (11th Cir.1991). Under the *Jackson* procedure, the FDIC must file a Rule 59 motion. If the district court refuses to modify or vacate, then the state court judgment or order becomes the district court's judgment or order. A notice of appeal would follow the district court's disposition of the Rule 59 motion.

is pending before the state's highest court or, even more startlingly, after disposition by the state's highest court and pending a petition for rehearing before that court, or even thereafter, pending a writ application to the United States Supreme Court. In each of those instances we must now fabricate the appropriate procedural rules out of whole cloth. Are we to decide whether the state court would consider the case important enough to grant discretionary review? Should we apply our own appellate rules and consider the appeal mandatory? Should we grant the rehearing? What standard are we to apply in reviewing the rehearing; should we seek to act as we fathom the state court would act or should we independently analyze the problem? Extending the majority's analysis, perhaps we should mandate the adoption of the state appellate court's decision as our own decision and then allow the case to proceed on a writ of certiorari from this court to the United States Supreme Court. Or even more alarming, suppose the supreme court of the state has granted a writ of certiorari to an intermediate state appellate court at the time of the FIRREA removal. Does that require the United States Supreme Court to hear the case on certiorari? Under the majority's analysis of *Granny Goose Foods* that answer apparently must be "yes." Other questions come to mind. I entertain no doubt whatever that the simple broad language of 12 U.S.C. § 1819(b)(2)(B) was not intended to impose those bizarre procedures upon the federal judiciary, either trial or appellate.

These dizzying circumstances would not plague our federal procedural scheme, however, if after removal the district court were asked to grant Rule 60(b) relief. In that setting the long-established federal protocols would not be shredded. In prior decisions we have allowed the removal of a case subsequent to a state court default judgment where Rule 60(b) relief was still available. *Federal Deposit Ins. Corp. v. Yancey Camp Development Co.,* 889 F.2d 647 (5th Cir.1989), is the only prior case allowing removal after the state appellate court has been vested with jurisdiction. In *Yancey* we held that the district court improperly refused to set aside a state default judgment. We did not discuss the removal question but noted that a "state court judgment in a case properly removed to federal court—like the one before us—can be vacated under Federal Rule of Civil Procedure 60(b)." 889 F.2d at 648.

In *Murray v. Ford Motor Co.,* 770 F.2d 461 (5th Cir.1985), removal was effected while a timely motion to set aside a default judgment was pending in the state trial court. The state court had not received the removal notice and had entered a default judgment after the removing party failed to appear in court. Pursuant to Rule 60(b)(1) we allowed the state judgment to be set aside. Similarly, in *Beighley v. Federal Deposit Ins. Corp.,* 868 F.2d 776 (5th Cir.1989), motions to vacate the judgment and for a new trial were still pending in the state trial court when the suit was removed.

In *Northshore Development, Inc. v. Lee,* 835 F.2d 580 (5th Cir.1988), we interpreted 12 U.S.C. § 1730(k)(1) (repealed) to permit removal after entry of a state trial court damages award; the FSLIC was seeking Rule 60(b) relief. We have also permitted a district court on removal to set aside a default judgment against a Jones Act defendant. *Azzopardi v. Ocean Drilling & Exploration Co.,* 742 F.2d 890 (5th Cir.1984). The Ninth Circuit has permitted a district court on removal to set aside a default judgment against a diverse defendant on a state law claim. *Butner v. Neustadter,* 324 F.2d 783 (9th Cir.1963). In *Munsey v. Testworth Laboratories, Inc.,* 227 F.2d 902 (6th Cir.1955), the Sixth Circuit did likewise. Removal in these cases did not require or result in a disruption of the established federal procedural practices.

I cannot accept the contention that congressional policy behind FIRREA justifies the remarkable removal power which today's majority grants the FDIC. Indeed, the scant guidance provided by FIRREA's legislative history supports my conclusion that the words "any" and "State court," when interpreted in the context of FIRREA and the general procedural statutes, do not mean *every* matter at *every* procedural stage of litigation. When FIRREA's removal provision was first submitted in a House of Representatives amendment it was described as vesting in the FDIC only the "authority to remove certain State court proceedings to Federal court." H.R.Rep. No. 101–54(I), 101st Cong. 1st Sess., *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 124–25 (discussing H.R. 1278, 101st Cong., 1st Sess. (Version 2 of May 18, 1989)) (emphasis added). *Certain* proceedings, not *all* state court proceedings.

I would hold that 12 U.S.C. § 1819(b)(2) does not permit the FDIC to remove a state court appellate proceeding if, at the time of removal, relief is not available under Rule 60 of the Federal Rules of Civil Procedure, and therefore respectfully DISSENT.

. . . . .