**MONT BELVIEU SQUARE, LTD.,**

v.

**CITY OF MONT BELVIEU, TEXAS.**

**No. CIV. A. G–97–674.**

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 2, 1998.

Edgar R Norwood; Taylor & Norwood, Liberty, TX, Ronald E. Tigner, Greenberg Peden Siegmyer and Oshman, Houston, TX, for Plaintiffs.

Lowell F. Denton, Denton McKamie & Navarro, San Antonio, TX, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

In its Original Petition filed on August 20, 1993 in the 344th Judicial District Court of Chambers County, Texas, Plaintiff Mont Belvieu Square, Ltd. ("MBS") asserted claims under the Texas Constitution for a "taking" of property and for violations of the Due Process and Equal Protection Clauses. MBS later amended its pleadings to include causes of action under the federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* and §§ 1981, 1982, 1983, and 1985 of the Civil Rights Act. Defendant City of Mont Belvieu, Texas, ("the City") removed the case to this Court on December 2, 1997 on the basis of Federal Question Jurisdiction under 28 U.S.C. § 1331. Now before the Court is Defendant's Motion for Summary Judgment, filed August 20, 1998. For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND

MBS, a limited partnership, filed a building permit application with the City of Mont Belvieu on May 3, 1993. MBS sought to construct a low to moderate income, multifamily apartment project with special below-market financing provided by the United States Department of Agriculture. The apartments were to be constructed on property to which MBS held an option to purchase. Although MBS's application complied

with existing building regulations, the City requested and MBS provided additional information about the project. On May 24, 1993, while the application was still under consideration, the City Council imposed a six-month moratorium on the issuance of all building permits except single family residential homes. The City removed MBS's permit application from the hands of the building inspector, who was prepared to approve it based upon compliance with then existing regulations, and forwarded it to the City Council.

On July 6, 1993, the City Council denied the permit allegedly on the grounds of the moratorium, and MBS was advised that it could seek a variance from the newly created Planning and Zoning Commission on a showing of hardship or necessity. The City Council would consider the Commission's recommendation and issue a final decision. According to the City Council, the moratorium was passed in connection with a proposal for a comprehensive zoning plan. To this date, five years later, the City has not adopted a comprehensive zoning plan. MBS alleges that its permit application was denied and the moratorium adopted with the obvious and discriminatory purpose of preventing MBS from constructing low to moderate income housing which would induce minorities to move into the predominately white city. As a result of the denial of MBS's application for a permit, the Department of Agriculture Farmers Home Administration financing was lost on July 15, 1993.

## II. ANALYSIS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. THE CITY'S LIMITATIONS DEFENSE

■ MBS filed a Third Amended Petition in state court adding federal causes of action for violations of the Fair Housing Act and Civil Rights Act to its state claims asserted five years earlier. The City subsequently removed the suit to this Court on the basis of Federal Question Jurisdiction. The City argues in its Motion for Summary Judgment that MBS's federal claims are barred by limitations as a matter of law. In its Response, MBS argues that the City waived any limitations defense by failing to properly plead it as an affirmative defense and alternatively that MBS's claims are not time barred because they "relate back" to the date of its Original Petition.

■ MBS argues that the City waived its right to assert the affirmative defense of limitations on Motion for Summary Judgment because it failed to file a responsive pleading stating that defense. Federal Rule of Civil Procedure 8(c) requires that an affirmative defense be set forth in a defendant's responsive pleading. As MBS notes, the United States Court of Appeals for the Fifth Circuit has strictly construed this Rule in more than one instance. *See Ashe v. Corley*, 992 F.2d 540, 545 n. 7 (5th Cir.1993); *Morgan Guaranty Trust Co. of New York v. Blum*, 649 F.2d 342, 345 (5th Cir.1981). However, the Fifth Circuit has also held:

"[W]hile failure to comply with Rule 8(c) usually results in a waiver ... '[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise, [ ] technical failure to comply precisely with Rule 8(c) is not fatal.' That is, the defendant does not waive an affirma-

tive defense if '[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.' "

*Lucas v. U.S.,* 807 F.2d 414, 417–18 (5th Cir.1986)(quoting *Allied Chemical Corp. v. Mackay,* 695 F.2d 854, 855–56 (5th Cir. 1983)); *see also Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.,* 679 F.2d 803, 804 (9th Cir.1982) (allowing defendant insurance company to plead a policy exclusion defense in a motion for summary judgment "whether or not it was specifically pleaded as an affirmative defense, at least where no prejudice results to the plaintiff"). On the facts of this case, the Court finds the latter authority applicable and persuasive. Although the City should have filed a fourth Answer raising the limitations defense, it would be unduly harsh to penalize the City for this technical mistake when the very next pleading filed by the City contained the defense and raised it unambiguously. Furthermore, MBS is not prejudiced by the City's raising of this issue for the first time on Motion for Summary Judgment. MBS had notice of the City's limitations defense and an opportunity to respond as evidenced by MBS's opposition to the defense set forth in its Response. Accordingly, the Court will consider the merits of the City's limitations defense.

 The City argues that the newly asserted federal claims are time barred because the applicable federal limitations periods had expired when MBS added its Fair Housing Act and Civil Rights Act claims. MBS argues that the federal claims "relate back" to its original pleading and thus are not time barred but would fall within the applicable federal limitations periods. For authority, MBS cites § 16.068 of the Texas Civil Practices and Remedies Code [1] which provides:

> If a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation *unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.*

Tex. Civ. Prac. & Rem.Code § 16.068 (emphasis added). The Court agrees with MBS that the federal claims arise from the same transaction or occurrence upon which the state claims are based, namely the allegedly wrongful denial of the building permit. The Court is unpersuaded by the City's contention that the allegations of racial discrimination are based upon new and distinct transactions. The motivation for the City's decision is inextricably intertwined with the denial of the permit and thus is merely one aspect of that transaction or occurrence, rather than a separate or distinct transaction. *See, e.g., Johansen v. E.I. Du Pont De Nemours & Co.,* 810 F.2d 1377 (5th Cir.1987)(holding that the plaintiff's breach of implied and express warranty claims arose out of the same accident as the strict products liability claims and thus the warranty claims related back). It is thus clear that MBS's claims "relate back."

The City also argues that the internal limitations periods contained in the Fair Housing Act render those claims ineligible for relation back. The City erroneously argues that "there is no authority for application of Texas' relation back doctrine where the original claims were premised solely on state law, and the newly asserted claims are premised on a federal statute which includes its own limitations period." To the contrary, Tex. Civ. Prac. Rem.Code § 16.068 as quoted above speaks to this exact issue without distinguishing among state and federal causes of action or causes of action containing internal limitations periods. Additionally, MBS cites case law from the United States Court of Appeals for the Fourth Circuit supporting its

---

1. MBS's relation back defense to a plea of limitations is governed by state law because at the time MBS amended its petition to include federal causes of action, the case was still in Texas state court. *See Matter of Meyerland Co.,* 960 F.2d 512, 520 (5th Cir.1992)("A case removed from state court simply comes into the federal system in the same condition in which it left the state system.") However, Federal Rule of Civil Procedure 15(c) also allows amended pleadings to "relate back" to original pleadings and thus the analysis is essentially the same under either State or Federal Rules of Procedure.

argument that violations of the Fair Housing Act, despite the internal limitations period, are amenable to relation back. In *Smith v. Town of Clarkton, N.C.*, 682 F.2d 1055, 1060 (4th Cir.1982) the Court stated:

> The addition by amendment of the specific allegation ... under the Fair Housing Act merely states specifically an alternate theory of recovery, and we cannot say that the trial court abused its discretion by allowing that amendment. Since we hold that the amendment was properly allowed ..., the "relation back" provision ... is effective to satisfy the ... time limitation contained in 42 U.S.C. Section 3612(a).

It is the City who fails to produce any authority that the internal limitations periods contained in the Fair Housing Act render causes of action asserted under it ineligible for "relation back." [2] Accordingly, the City's Motion for Summary Judgment on its limitations defense is **DENIED**.

## IV. RIPENESS OF MBS'S CLAIMS

■ Takings, due process, and equal protection claims against state or local government in land-use cases are not ripe until there has been a final decision by the governmental entity. *See Williamson Planning Comm'n v. Hamilton*, 473 U.S. 172, 186–87, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex.1998). Thus, to the extent MBS's claims are based on the improper exercise of police power, those claims are not ripe until there has been a final decision regarding the application of the regulation. *See id.* MBS is not, however, required to exhaust state administrative remedies as a prerequisite to an action under § 1983. *See Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The question is whether the decisionmaker has reached a final definitive position that inflicts injury. The Texas Supreme Court stated

that "[a] final decision usually requires both a rejected development plan and the denial of a variance from the controlling regulation." *Mayhew*, 964 S.W.2d at 929. The Court went on to say, however, that futile variance requests or reapplications are not required. *See id.*

The City argues that none of MBS's state nor federal Constitutional claims are ripe because MBS failed to seek a variance from the Planning and Zoning Commission after the initial denial of MBS's permit application. On this basis, the City argues that no final administrative decision was ever rendered. However, MBS argues and the Court agrees that MBS was not required to avail itself of a variance procedure instituted as part of a moratorium passed three weeks after MBS filed its original, allegedly compliant application. Under § 481.143 of the Texas Government Code,[3] repealed in 1997, MBS was entitled to have its permit application considered and issued in accordance with the regulations in effect when MBS filed its application.[4] There was no appeal procedure in place prior to MBS's filing, thus the denial received by MBS constituted a final decision for the purpose of ripeness of MBS's claims. While the repeal of § 481.143 four years later may have some other relevance to MBS's claims, it does not bear on the ripeness issue because at the time MBS filed suit, its claims were ripe.

■ On additional and alternative grounds, the Court finds that MBS has produced sufficient evidence to indicate that seeking a variance would have been utterly futile. The City Council issued the initial denial and referred MBS to the Planning and Zoning Commission. Assuming MBS pursued this avenue, the Planning and Zoning Commission would then consider whether MBS showed hardship or necessity requiring an exception to the moratorium. Based upon

---

**2.** Apparently, The City also argues that MBS seeks to have state statute of limitations apply to the federal causes of action. The City is clearly wrong. Since MBS's federal claims "relate back" under state law to the filing of MBS's Original Complaint, those claims fall within the applicable *federal* limitations periods for Civil Rights and Fair Housing Act claims.

**3.** Repealed by Act of June 1, 1997, 75th Leg., R.S., ch. 1041, section 51, 1997 Tex. Gen. Laws 3943, 3966.

**4.** This was also the conclusion reached by the state court judge on Motion for Summary Judgment.

its conclusion, the Planning and Zoning Commission would make a recommendation to the City Council and the City Council would have the final say. The deposition testimony of a City Council member indicates that the City's decision to impose the moratorium and to deny MBS's application for a building permit may have been racially motivated. If in fact the City Council's decision was racially motivated, (which deeply disturbs the Court), the City Council would presumably have made the same racially motivated denial of the permit even if the newly created Planning and Zoning Commission recommended issuance of the permit; thus, MBS's appeal would have been futile.

## V. NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

The City's final argument is that there is no evidence that the City effected a "taking" of MBS's property or violated MBS's rights to due process or equal protection. MBS apparently bases its claims on three theories which are discussed below in conjunction with supporting evidence and law. First, MBS claims that the City violated its right to due process and effected a taking by unlawfully withholding a permit to which MBS was entitled under then controlling laws and regulations; MBS claims a vested right to the permit. Second, MBS alleges that the City's actions—passing and retroactively applying the moratorium to MBS's already pending application—were motivated by racial discrimination. Finally, MBS argues that its application was subject to heightened scrutiny and procedural irregularity which in and of itself constituted a Constitutional violation.

MBS's vested rights theory is based upon § 481.143 of the Texas Government Code which was repealed in 1997. At the time MBS initially sought a building permit, that provision mandated that the decision by a regulatory agency to grant or deny a permit was to be made in light of laws in effect at the time the original application was filed. Specifically, the section provided:

"The approval, disapproval, or conditional approval of an application for a permit shall be considered by each regulatory agency solely on the basis of any orders, regulations, ordinances, or other duly adopted requirements in effect at the time the original application for the permit is filed. If a series of permits is required for a project, the orders, regulations, ordinances, or other requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the completion of the project."

Texas Gov't Code Ann. § 481.143. MBS has offered credible evidence that its permit application complied with all existing regulations when submitted. MBS alleges that under former Texas Government Code § 481.143 it was therefore entitled to a building permit as of the date the application was filed. Consequently, MBS argues that it now holds a "vested right" to the permit that could not be revoked by repeal of the statute. For authority MBS relies on *Shelby Operating Co. v. City of Waskom*, 964 S.W.2d 75 (Tex.App.—Texarkana 1997, writ denied). In that case the Texarkana Court of Appeals assumed without discussion that § 481.143 applied to the dispute, despite its repeal, because it was in force when the action was begun. *See id.* at 80. In dictum, that Court stated that the plaintiff would have had a vested right to a drilling permit as of the date of the plaintiff's initial application if that application had complied with all then existing regulations. *See id.* MBS also directs the Court to opinions of the Texas Supreme Court stating that vested rights cannot be repealed. *See City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex.1997); *McCain v. Yost*, 284 S.W.2d 898, 900 (Tex.1955).

The Court agrees with the City that the outcome in *Quick v. Austin*, No. 96–1154, 1998 WL 236304, at *1, —— S.W.2d ——, —— (Tex. May 8, 1998) controls this case and defeats MBS's vested rights theory. In *Quick* the Texas Supreme Court specifically addressed the repeal of § 481.143 stating: "[w]hen a cause of action is based on a statute, the repeal of that statute without a savings clause for pending suits is usually given immediate effect." *Quick v. Austin*, No. 96–1154, 1998 WL 236304, at *16, —— S.W.2d ——, —— (Tex. May 8, 1998)(citing

*Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex.1982)); *see also Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The Court went on to give repeal of the statute immediate effect by refusing to even review the appellant's argument that certain permit applications were covered by the statute. *See Quick* at \*16, —— S.W.2d at ——. Additionally, *Quick* was subsequently construed on facts similar to the case at bar by a Texas federal district court. *See Jim Sowell Constr. Co., Inc. v. City of Coppell*, No. 96–0666, 1998 WL 574771, at \*1 (N.D.Tex. Sept.1, 1998). That Court held that it was divested of jurisdiction over a takings claim and a statutory claim based upon denial of a building permit where the plaintiff alleged statutorily vested rights under § 481.143. *See id.* at \*2. *Shelby*'s dictum on which MBS relies has thus been superseded by a ruling directly on this issue from the highest court in the state.[5]

The Court also cannot agree with MBS that the facts of this case make the holding in *Quick* inapplicable. MBS argues that the *Quick* Court was not confronted with the issue of vested rights under the statute, but merely whether one of the plaintiffs had a right to "lock-in" regulations for subsequent permits based upon the filing date of the preliminary subdivision approvals. As the Supreme Court unequivocally declined to even reach the issue of applicability of § 141.183, a preliminary question as to whether or not an entitlement such as the one claimed by MBS exists, this Court cannot agree that any factual distinctions in the instant case would make a difference to the Texas Supreme Court. *See, e.g. Jim Sowell Constr. Co., Inc.*, No. 96–0666, 1998 WL 574771, at \*1 (N.D.Tex. Sept.1, 1998). The case law of the United States Court of Appeals for the Fifth Circuit further bolsters this conclusion. In ruling for an appellant on the basis of a statute that had been amended to favor the appellant after suit had been instituted, the Fifth Circuit Court of Appeals agreed with the appellant who "[p]oint[ed] to the universality of the holding that *no one has a vested right in statutory privileges and*

*exemptions*, and that until final judgment on a pending action, the repeal of the statute, which gives the right of action, or upon which the suit is predicated, destroys it." *General Motors Acceptance Corp. v. Saliba*, 260 F.2d 262, 263–64 (5th Cir.1958) (emphasis added).

Finally, the Court must also deny MBS's request to find a vested right conferred by equity. The Court agrees with the reasoning of *Jim Sowell Constr. Co., Inc.* where that Court rejected a similar request on the grounds that such an approach would be "contrary to Texas law, which neither confers vested rights of the type for which plaintiffs argue nor applies estoppel except in unique and distinguishable circumstances." *Jim Sowell Constr. Co., Inc.*, No. 96–0666, 1998 WL 574771, at \*3 (N.D.Tex. Sept.1, 1998).

■■■ Despite MBS's arguments to the contrary, the Court finds MBS's takings claim is necessarily based upon the vested rights theory. In the absence of a physical invasion of property, a taking requires a regulation that denies all economically viable use of the property or unreasonably interferes with a landowner's right to use and enjoy their property. *Mayhew*, 964 S.W.2d at 935. Essentially, MBS alleges that a regulatory taking of the latter type was effected by the moratorium. However, the applicable general rule which controls as a result of the repeal of § 481.143 is that the right to develop property is subject to intervening regulations or regulatory changes. *See Quick v. Austin*, No. 96–1154, 1998 WL 236304, at \*15, —— S.W.2d at —— (Tex. May 8, 1998)(citing *Connor v. City of Univ. Park*, 142 S.W.2d 706, 709 (Tex.Civ.App.—Dallas 1940, writ ref'd) ); *cf. City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex.1972) ("[P]roperty owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made.") A six-month, city-wide moratorium which bans the issuance of building permits (except single-family homes) while the City considers whether to develop a comprehensive zoning plan, without more, cannot as a matter of law constitute an un-

---

5. A motion for rehearing is pending in *Quick*. If the Texas Supreme Court revises *Quick*, this decision will also be subject to revision. *See Jim Sowell Construction Co., Inc.*, at \*2.

reasonable interference with a landowner's right to use and enjoy their property. *See, e.g., Schafer v. City of New Orleans,* 743 F.2d 1086 (5th Cir.1984) (ordinance imposing moratorium on issuance of building permits in certain area until city could complete a study did not take any of landowner's property but merely suspended landowner's development rights). Despite MBS's attempt to artfully plead around the now repealed statute, there is no viability to a takings claim unless MBS had a vested right to the permit. The City's Motion for Summary Judgment on MBS's state and federal takings claims is therefore **GRANTED,** and each and all such claims are **DISMISSED WITH PREJUDICE.**[6]

■ MBS's next theory is that the City denied its permit application in order to prevent the construction of MBS's proposed housing project because it would attract low-income persons and minorities. According to MBS, the moratorium was a mere pretext designed to hide this discriminatory intent. In support of its claims, MBS states several facts and allegations. To begin with, MBS provides evidence that its application was compliant with existing regulations when filed and normally would have been granted by the building inspector as a matter of course. The City deviated from normal procedure, however, first by imposing additional requirements on MBS and then by removing MBS's application from the hands of the building inspector who was prepared to approve it. The City Council subsequently denied MBS's application stating as the reason a moratorium passed three weeks after MBS filed its application. At least one witness heard other Council members make racially discriminatory statements in connection with MBS's proposed project and question the legality of a moratorium. Additionally, five years later, MBS notes that the City has never passed a comprehensive zoning ordinance. The City claims it passed the moratorium to maintain the status quo while it contemplated developing a comprehensive zoning ordinance. The City alleges that MBS's permit was initially denied and referred to the newly created Planning and Zoning Commission solely on the basis of that moratorium. At this juncture, in light of the limited discovery conducted on this issue in accord with an agreement of the parties, MBS has asserted facts and allegations sufficient to create a material issue of fact as to the actual reason the permit was denied and the real purpose behind the moratorium. If in fact the contemplation of a comprehensive zoning ordinance was a pretext to hide a discriminatory motive for denying MBS's permit, the City's actions were unrelated to a legitimate state interest and thus unconstitutional.

■ MBS's claims are properly stated as violations of due process. As many Courts have observed, government action pertaining to land-use decisions comports with substantive due process if that action is rationally related to legitimate government interests. *See, e.g., FM Properties Operating Co. v. City of Austin,* 93 F.3d 167 (5th Cir.1996); *Horizon Concepts, Inc. v. City of Balch Springs,* 789 F.2d 1165 (5th Cir.1986); *Schafer,* 743 F.2d 1086. Courts also emphasize, however, that "[land-use] ordinance[s] and all similar laws and regulations must find their justification in some aspect of the police power, asserted for the public welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 387 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926); *see also Wheeler v. City of Pleasant Grove,* 664 F.2d 99, 100 (5th Cir.1981) (holding that an ordinance banning the construction of apartment complexes bore no substantial relationship to legitimate concerns for health, safety, welfare, or the general well-being of the community). Zoning reclassification, normally not subject to federal court scrutiny, may violate due process where "the action of the zoning commission is arbitrary and capricious." *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir. 1974) (en banc). Regardless of the deference normally accorded zoning practices by the courts, the Constitution does not tolerate arbitrary and unreasoned action. *See Altaire Builders, Inc. v. Village of Horseheads,* 551 F.Supp. 1066, 1069 (W.D.N.Y.1982) (citations omitted). And "[i]t has been recognized that

---

6. In *Mayhew,* the Texas Supreme Court indicated that federal and state takings claims are governed by the same standard. *See Mayhew,* 964 S.W.2d at 932.

zoning action which is 'tainted with fundamental procedural irregularity, racial animus, or the like' does amount to an actionable denial of due process.' " *Scott v. Greenville County*, 716 F.2d 1409, 1419 (4th Cir.1983)(citing *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)). Certainly if MBS can prove that a discriminatory motive underlie the actions surrounding the denial of its permit application, the City's actions were irrational, arbitrary, and capricious. Racial discrimination bears no substantial relationship to a legitimate public purpose. Furthermore, the evidence of procedural irregularity connected with the denial of MBS's permit alone is sufficient to allow MBS to survive a Motion for Summary Judgment on its due process claims. *See, e.g., Southern Coop. Dev. Fund v. Driggers*, 696 F.2d 1347 (11th Cir.1983)(holding that in light of landowners' compliance with requirements of county subdivision regulation, commission had administrative duty to approve proposed plat and the refusal to do so was a violation of landowners' guarantee of due process).

MBS may also have an equal protection claim. The City misstates the law in arguing that "if any conceivable rational basis exists for the City Council's decision exists, it must stand as a legitimate exercise of the council's discretionary powers." As stated in *Scott v. Greenville County*, 716 F.2d at 1416, "despite the great deference accorded local officials in zoning and land use matters, their decisions and official actions are not exempt form the constitutional command to be free of racial discrimination. Racially discriminatory local land use decisions of various kinds have long been struck down or found actionable under the equal Protection clause." Furthermore, the United States Supreme Court has stated in the area of housing development that official government actions which are based even in part on improper racial considerations violate the Equal Protection Clause of the Fourteenth Amendment. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *see also Crow v. Brown*, 457 F.2d 788 (5th Cir.1972)(per curiam)(affirming a district court's ruling that the defendant county had violated the Equal

Protection Clause when its officials denied building permits for the avowed purpose of excluding low income blacks from tracts legitimately zoned for construction of apartments). The Supreme Court went on to say that four factors may guide courts in determining if a particular decision was motivated by a discriminatory purpose: (1) whether the impact of a particular decision bears more heavily on one race than another; (2) whether a clear pattern unexplainable on grounds other than race is shown; (3) the historical background of the decision; and (4) the legislative or administrative history, including contemporaneous statements made by members of the decision-making body. *Village of Arlington Heights*, 429 U.S. at 266–67, 97 S.Ct. at 563–64. MBS has not had an adequate opportunity to obtain evidence pertaining to those factors. Additional discovery will also give MBS the opportunity to address the City's argument that MBS has not produced evidence of any similarly situated persons who received more favorable treatment than MBS. Such evidence is necessary to support an equal protection claim. *See, e.g., Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir.1996) ("We may conduct an equal protection inquiry only 'if the challenged government action classifies or distinguished between two or more relevant groups.' "); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir.1991)(a complaint did not state an equal protection claim, despite allegations of race discrimination, because plaintiffs failed to allege the existence of a similarly situated non-minority neighborhood); *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1079–80 (5th Cir.1989).

▮ As discussed above, Defendant's Motion for Summary Judgment is premature with respect to Plaintiff's due process and equal protection claims, and is consequently **DENIED** in those respects. Pursuant to an agreement with the City to postpone further discovery until after mediation, MBS has not yet taken the depositions of many current and former members of the Mont Belvieu City government on the issue of its discrimination claims. "Summary judgment should not .... ordinarily be granted before discov-

ery has been completed." *Alabama Farm Bureau Mutual Cas. Co. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir.1979); *see also, Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1145–46 (5th Cir.1973) (en banc) (vacating summary judgment that was granted without allowing party to take discovery); *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 353 (5th Cir.1989) (noting that the entitlement to discovery before summary judgment is especially critical where proof must come largely from the opposition). MBS submitted some evidence in the form of deposition testimony from a witness indicating the witness had heard City Council members express opposition to MBS's project because "they didn't want low-income minorities" and "those type of people" moving into town. In light of the limited discovery on this issue to date, this testimony alone establishes a genuine issue of material fact as to an unlawful, racially discriminatory motive for denying MBS' building permit. Accordingly, again, the City's Motion for Summary Judgment on MBS's due process and equal protection claims is **DENIED**.

## VI. CONCLUSION

For the reasons outlined in this Order, Defendants' Motion for Summary Judgment is hereby **GRANTED** with respect to Plaintiff's federal and state takings claims, (which are hereby **DISMISSED WITH PREJUDICE**), and **DENIED** with respect to Plaintiff's federal and state due process and equal protection claims and Plaintiff's Fair Housing Act claims. It is **ORDERED** that the parties file nothing further regarding the issues addressed in this Order, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled, on any matter herein addressed, from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**